UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | |
| v. ) | No. 02 CR 648 |
| ) | Hon. Ronald A. Guzman |
| ) | |
| PHILIP MICHAEL SEBOLT ) | |

### GOVERNMENT'S MOTION FOR UPWARD DEPARTURE

The UNITED STATES OF AMERICA, through PATRICK J. FITZGERALD, United States Attorney for the Northern District of Illinois, respectfully moves this Court to depart upward from defendant Philip Michael Sebolt's sentencing guideline range. In support of its motion, the government states as follows:

### I.  FACTUAL BACKGROUND

Defendant is a child molester who possessed 27,000 images of child pornography on his computer, distributed child pornpgraphy to thousands of people and offered to produce child pornography in exchange for tips on how to successfully molest children.

### A.  Defendant's File Server

In approximately March 2002, defendant created something known as a File Server on his computer, which allowed for easy trade of child pornography via the internet. Defendant's file server was uncovered on March 14, 2002 by FBI Special Agent Mark J. Miller. Agent Miller is with the FBI in Baltimore and is specifically assigned to investigate child pornography. On March 14, 2002, Agent Miller logged onto the Internet and, via software he had on his computer, was able to access particular channels (also known as chat rooms) on the internet that he knows to be dedicated to the



trading of child pornography. Two of the channels he accessed that day were #0!!!!!!!!!!!!preteen666 ("preteen666") and #0!!!!!!!!!!!!preteen411 ("preteen411"). While in preteen666, Agent Miller noticed that the person using the screen name "Blah35674" was running a File Server ("F-Serve") and had pictures of young boys and girls available. "Blah35674" was later identified as the defendant and his address was determined to be 242 East George Street, Bensenville, Illinois, 60106.

Agent Miller connected to defendant's file server, which had been set up on a ratio distribution system. The ration system required that the person requesting child pornography from the defendant's file server first would have to send a file (preferably of child pornography) to the file server. Defendant had an advertisement on his file server which read:

**Upload Boy Baby Pics! Upload Boy Baby Pics! Upload Boy Baby Pics! Upload Boy Baby Pics! Upload Boy Baby Pics! I'm also looking for a text file or someone to msg me, on tips/tactics/advice on how to molest kids. I am not out to hurt or kidnap a kid. Just fun loving molesting. I have a web cam and am willing to produce pics if I can successfully molest a kid/baby. Any help would be nice. :)**

In addition, defendant had posted a message in the file server that he was looking for a specific series of child pornography known as "amy rap-bek 2rap-bek 3rap-bek 3rapbpip" and would give the sender of that series 150% bonus credit for sending him that series.

After Agent Miller connected to defendant's F-Serve, he viewed the directory of images availble for distribution. The files were arranged alphabetically and Agent Miller recognized the names of some of the files as images of child pornography. Agent Miller then uploaded (sent) his own files which enabled him to download 53 images of child pornography from defendant's F-serve. The files Agent Miller sent were not child pornography but were named to give the impression that they were child pornography. Agent Miller then contacted the FBI in Chicago because he had confirmed that the defendant was running the file server from a location in Bensenville, Illinois.

## B. Search of Defendant's Home and Defendant's Statements

On July 1, 2002, pursuant to a federal search warrant, Special Agents of the FBI in Chicago and Detectives from the Cook County Sheriff's Police, Child Exploitation Unit, searched defendant's residence in Bensenville. Law enforcement found the defendant in his bedroom deleting files from his computer. Law enforcement unplugged the computer system to prevent further deletion. The search of defendant's bedroom revealed the following: approximately 200 images of child pornography and a pair of size 3 boys Pokeman underwear beneath the defendant's bed; a webcam and a 35mm camera, two computer monitors, two computer towers containing four hard drives and numerous other computer-related items.

At that time, Detective Robert Farley and Agent McDonough interview the defendant at his residence. Detective Farley orally advised defendant of his *Miranda* rights from a pre-printed card. Defendant indicated that he understood his rights and would answer questions. A copy of the FBI 302 report regarding the interview is attached to the government's version at Tab B. The report has been redacted to protect the true identity of one of defendant's child victims. In sum, defendant admitted the following:

- he was operating a file server for the sole purpose of distributing child pornography

- he used the screen name "Blah" followed by numbers while trading child pornography

- his file server was operating on a one to two basis so that if someone sends him one picture, he sends them two

- the youngest child depicted in sexually explicit pictures stored on his computer is one year old

- when he heard someone knock at the door that morning, he began deleting child pornography files on his computer

- he had the child pornography organized alphabetically on his computer

- he posted the advertisement beginning with "Upload Boy Baby Pics" (described in full above) because he was looking for people to trade child pornography with and because he was looking for information regarding how to molest children

- he was shown some of the images of child pornography that had been sent to Agent Miller on March 14, 2002, and acknowledged that those images were stored on his computer and that they are pictures of real kids

- he was shown some of the images of child pornography and the underwear found under his bed and admitted that they were his. The defendant acknowledged that the two pictures were child pornography and depicted children between three and five years old being sexually abused. The defendant also admitted that he masturbated daily while looking at the child pornography pictures and while sniffing the young boys underpants

- his primary sexual attraction is to boys who are two years old.

- he admitted to molesting his young male relative on approximately 12 occasions, from the time his relative was six years old until he was eight years old. Defendant described in detail how the molestation occurred. Defendant also admitted that he showed his relative images of child pornography so that his relative would know what to do. The relative was subsequently identified and interviewed, and the sexual abuse was confirmed.

After the interview at the defendant's residence concluded, the agents and detectives took the defendant to the FBI Field Office for processing. Once the defendant was at the field office, he signed a written waiver of his Miranda rights and provided a written statement which included most of the information described above. A copy of defendant's hand written statement is included with the government's version at Tab B. This statement has also been redacted to protect the identity of the child victim.

### C. Child Pornography Saved on Defendant's Hard Drive

The FBI subsequently searched the hard drive of defendant's computers. They recovered approximately 27,000 of images of child pornography that the defendant had available for distribution on his file server. The images are of children of all ages engaged in sexually explicit conduct with other children and with adults. Many of the images involve prepubescent minors, including infants and toddlers. Many of the images are of a sadistic or masochistic nature, including showing very young children and infants in bondage, engaged in violent acts, being raped and tortured and being prodded sexually by foreign objects. The child pornography found on defendant's computer is among the worst that FBI SA Scott McDonough and SA Tracie Keegan have seen to date.

### D. Distribution Logs on Defendant's Computer

The FBI also found saved logs revealing images of child pornography that had been distributed from defendant's file server. The logs revealed that over a five day period in June 2003 more than 920 different people accessed the defendant's file server, some of whom traded huge numbers of child pornography with the defendant. The defendant distributed multiple images of child pornography to over 920 people in a five-day period. It is hard to imagine how many people to whom defendant distributed child pornography during the entire time he was running the file server. The defendant was certainly running the file server from May through July 2002. The logs further revealed that on June 25, 2002, defendant's file server had distributed numerous images of child pornography to someone using the screen name "gustavepremier."

### E. On-Line Chats Regarding Molestation of Children on Defendant's Hard Drive

In addition to the child pornography, the FBI recovered on-line chats between the defendant

and other individuals that the defendant had saved in his computer files. These chats are attached to the government's version at Tab C. Most of the chats were saved under a file defendant named "How to Molest." In these discussions, the defendant discussed, among other things: (1) his sexual attraction to young boys and girls, (2) his molestation of a relative and possibly other children, (3) scenarios for successfully molesting kids (both that he had tried and that he had thought of), (4) the possibility of producing his own child pornography (including taking pictures of a little girl while having intercourse with her), (5) his interest in showing children child pornography, (6) his interest in offering children money in exchange for letting the defendant molest them, (7) the fact that he was stalking kids at a local bus stop and (8) the fact that he was spending time in the bathroom of a park trying to molest little boys who were in the bathroom.

During one of the chats, the defendant directed an individual to what appears to have been a website that he was running that included pictures of child pornography. The FBI was unsuccessful in its attempts to access this site.

### F. Defendant's Prior Acts of Molestation of His Young Male Relative and a Young Female.

Defendant admitted to law enforcement that he sexually molested his young male relative (whom defendant named by first and last name as well as by specific relation) approximately 12 times over a period of approximately two years–from at least late 1997 through 1999. This molestation included the defendant rubbing his relative's penis both above and below clothing as well as the defendant performing oral sex on his relative while masturbating. In addition, defendant admitted to showing his male relative images of child pornography so that his relative would know what to do.

After defendant's admissions, a victim sensitive interview was conducted with the male relative. The victim confirmed that the molestation had indeed occurred on numerous occasions over a period of years.

While defendant was incarcerated at the MCC, he made numerous telephone calls to friends and family members, all of which were recorded. During some of the calls to family members, defendant made admissions about his molestation of his relative. For example, during one call, defendant told his uncle that he had molested the victim "more than once" and asked his uncle to the victim that the defendant was "sorry" for what he had done.

Through interviews with individuals who were once close to defendant, the government learned of another victim that the defendant molested. Based on information provided to the government, the government located the alleged female victim and a victim sensitive interview was conducted. At the time of the interview, the victim was in high school. The victim admitted that beginning when she was in fourth grade and continuing until she was in sixth grade, defendant molested her on a fairly regular basis.

Specifically, the victim said that defendant lived in the same building as one of her friends ("Individual A") and that she would see defendant when she was playing with Individual A in the vicinity of her Individual A's residential building. The victim further stated that defendant would often meet her and Individual A when they got off the school bus and ask her to come up to his apartment. Nothing happened the first few times that she went up to defendant's bedroom. After the first few visits, defendant started showing her pictures of teenage girls kissing each other and touching each other's "private parts." The pictures were on defendant's computer. On one occasion, defendant showed her pictures of very young boys who were kissing each other and touching each

other's genitals. The victim stated that defendant showed her pictures depicting young people having sexual contact 5-10 times and would make comments such as "We should try this." The victim further stated that defendant would touch her "private part" and put his fingers inside her "private part." She also stated that defendant would have her touch his "private part" under his clothes. Defendant told her that no one would find out what was happening and that she should not tell anyone. The victim stated that this type of physical contact between her and the defendant happened on numerous occasions while she was in fourth and fifth grade. On one occasion, defendant put his mouth on her private part and asked her to put her mouth on his private part. The victim explained that eventually she stopped hanging out with her friend so she did not see defendant on a regular basis anymore.

The government interviewed "Individual A," the victim's friend, who lived in defendant's building. Individual A confirmed that defendant molested her friend. She further admitted that defendant exposed himself to her and the victim's sister on several occasions and that they touched his penis. In regard to the molestation of her friend, Individual A witnessed the following: (1) defendant exposing his penis to the victim; (2) defendant fingering the victim; and (3) defendant asking the victim to lie on top of him and then asking Individual A to leave. Individual A also told the government that her friend told her that defendant would not only touch her private part with his hand but would also try to penetrate her. Individual A said that she personally witnessed the defendant molesting her friend on four occasions and that it might have happened on other occasions.

### G. Defendant's Attempts to Molest Other Children.

On May 9, 2002, during the time that defendant had his file server running, defendant was stopped and questioned by the Bensenville Police Department in connection with his suspected

indecent solicitation of a minor. The reports are included in the government's version at Tab D. A concerned citizen spotted defendant walking down the street. Defendant was following a young girl (approximately 7 or 8 years old) and was attempting to talk to her. The citizen believed that defendant saw her and therefore stopped and turned in the other direction. The minor girl was not located and no charges were brought.

Based upon the saved on-line chats, included herein, it is clear that defendant was in fact out stalking young children at local bus stops in an attempt to molest them. In the saved on-line chats, defendant specifically talks about the fact that he had "been driving around in the morning trying to find what girls wait on what bus stops but hch i always am a little to late. the damn bus ends up coming just as i drive around." Defendant also expressed an interested in "this one girl who comes off the school bus and walks a little bit to get to her house." Defendant says, I was thinking of asking this one girl that walks home from the bus .... i was gonna approach her and say hi and ask her age and then tell her that I'm doing a project and i need to take pics of girls under 10 naked and ask her if she would like to pose for me. then work on licking her and fucking her as i take pics of her." Defendant also discussed following kids who walked home from school. "how about kids that walk home from school it i were to park in a parking lot thats not too far away from the school but far enough to where no one would notice me."

In addition to following kids to and from school, the defendant also discussed the fact that he frequented parks and tried to molest kids. In one of the chats, defendant said, "i almost molested a boy at a park yesterday. i asked if he has ever seen a guys dick before. he aid no so i asked if he wants to see mine, but he turned the offer down." He also mentioned that he thought about trying to bribe the kid to let him molest him. "i was gonna do that on the boy yesterday. see i was coming

out of the park bathroom when he was going in. i was gonna ask if i can watch him pee. if he said no, I'd tell the kid that i will give him 5 bucks if he lets me watch him pee. and then to touch him, maybe offer him more." Defendant also talked about approaching a boy at a playground bathroom. "a few days ago i was using a one person bathroom at a play ground. i knew there were three mexican boys playing alone. just as i came out, a boy wanted to use it. so i said "hey have you ever seen a guys dick before?" he said no i then said "wanna see mine" but he didn't want to. Defendant also said, "what if i were to offer money to a kid and in return to see and play with his dick?"

Defendant also discussed using child pornography as a way to try and molest kids. On one occasion defendant wrote "what about showing a kid kiddie porn and saying that i found it on the ground. and at least finding out if the kid likes it or not. if the kid does like it, then ask the kid if me and the kid wanna do what they are doing in the pic." Defendant goes on to say that he is concerned about getting caught with child pornography on him. For example, in several chats, defendant asked, "what if i were to show a boy that is alone some boy kiddie porn and say 'hey dude check out what i found earlier' and then if he likes it, say 'wanna do what they are doing in the pics?"

### H. Defendant Traveled to Wisconsin to Engage in Sex with 16 Year Old Girl.

During his post-arrest statement, defendant admitted that he met a girl on the internet and traveled to Wisconsin to meet her and have sex with her. Defendant said that he and the girl performed oral sex on each other. The victim was located and confirmed that the defendant had in fact traveled to meet her in Wisconsin. She admitted that defendant had asked to have sex with her but denied that she had engaged in any sexual activity with the defendant. During tape recorded calls at the MCC, defendant made additional admissions about his actions. He admitted that he had

engaged in sexual activity with the victim and indicated that the victim had lied when she told law enforcement that they had not engaged in any sexual activity.

## II. DEFENDANT'S CRIMINAL HISTORY CATEGORY SIGNIFICANTLY UNDER-REPRESENTS HIS TRUE CRIMINAL HISTORY AND THE LIKELIHOOD THAT HE WILL COMMIT CRIMES IN THE FUTURE.

A Criminal History Category I would significantly under-represent the seriousness of defendant Sebolt's actual history of criminal conduct and the likelihood that he will commit crimes in the future. As demonstrated below and in the PSR, defendant is not only a user and distributor of child pornography, but he is also a child molester who sought new victims on a regular basis.

This Court "can and must consider a defendant's entire history" in order to make an informed decision as to the proper punishment. *United States v. Torres*, 977 F.2d 321, 330 (7th Cir. 1992) (quoting *United States v. Coonce*, 961 F.2d 1268, 1275 (7th Cir. 1992)). In doing so, the Court may use all information it possesses regarding the defendant's background, character, and conduct in order to arrive at a proper sentence. *United States v. Terry*, 930 F.2d 542, 545 (7th Cir. 1991) ("Sentencing judges can consider whatever information they possess of prior criminal conduct, as long as that information is 'reliable.'") (citing U.S.S.G. § 4A1.3).

In particular, U.S.S.G. § 4A1.3 provides that an upward departure may be warranted where a defendant's criminal history category significantly under-represents the seriousness of his criminal history or the likelihood that he will commit further crimes.[1] An upward departure under U.S.S.G.

---

[1] Section 4A1.3 of the Sentencing Guidelines provides, in pertinent part:
> If reliable information indicates that the criminal history category does not adequately reflect the seriousness of the defendant's past criminal conduct or the likelihood that the defendant will commit other crimes, the court may consider imposing a sentence departing from the otherwise applicable guideline range. Such information may include, but is not limited to, information concerning:
> (a) prior sentence(s) not used in computing the criminal history category (e.g.,

-11-

§ 4A1.3 is particularly appropriate here because of the similar, continuous nature of Sebolt's criminal conduct from at least late 1997 until the time of his arrest in July 2002, namely molestations, attempts to molest, and the distribution of child pornography. The Seventh Circuit has upheld upward departures on such grounds: "If reliable information indicates that the defendant has committed the same offense more than once, this may demonstrate a need for greater sanctions to deter him from committing the same offense again." *United States v. Schweihs*, 971 F.2d 1302, 1319 (7th Cir. 1992) (citing *United States v. Schmude*, 901 F.2d 555, 559 (7th Cir. 1990)). Specifically, defendant's criminal history has included:

- Molesting two young children--one male and one female--on numerous occasions between at least December 1997 and 2000 and showing them child pornography
- Exposing his genitals to two other young female children
- Stalking children at local bus stops and other public places
- Frequenting public park bathrooms in an attempt to molest other children
- Engaging in sexual activity with a sixteen-year-old minor

This criminal history demonstrates that Sebolt has "led a life of essentially continual crime." *See United States v. Croom*, 50 F.3d 433, 435 (7th Cir. 1995). As the Court stated in *Croom*, this is a sound basis for an upward departure:

> The Guidelines are designed for normal cases; a defendant who has demonstrated criminal propensities that make him more dangerous than the ordinary person with the same criminal

---

sentences for foreign and tribal offenses); . . .

. . .

(e) prior similar adult criminal conduct not resulting in a criminal conviction. A departure under this provision is warranted when the criminal history category significantly under-represents the seriousness of the defendant's criminal history or the likelihood that the defendant will commit further crimes. . . .

history score may receive a higher sentence.

*Id.*

Based on the above, Sebolt's criminal history category of I significantly under-represents Sebolt's criminal history and grossly underestimates the likelihood that he will continue his criminal career once he has completed this sentence. Accordingly, the case warrants an upward departure pursuant to U.S.S.G. § 4A1.3 from a criminal history category of I to a criminal history category of VI, which more closely resembles Sebolt's criminal history.

### III. DEFENDANT'S PATTERN OF SEXUAL EXPLOITATION FAR EXCEEDS THE NUMBER OF CHILD VICTIMS CONTEMPLATED IN THE ENHANCEMENT UNDER GUIDELINE 2G2.2(b)(4).

Sentencing Guideline § 2G2.2(b)(4) provides that, if the Court finds that a defendant "engaged in pattern of activity involving the sexual abuse or exploitation of a minor," the defendant's offense level must be increased by 5. *See* U.S.S.G. § 2G2.2(b)(4). "Pattern of activity involving the sexual abuse or exploitation of a minor" is, in turn, defined as "two or more separate instances of the sexual abuse or sexual exploitation of a minor by defendant, whether or not the abuse or exploitation (A) occurred during the course of the offense; (B) involved the same or different victims; or (C) resulted in a conviction for such conduct." U.S.S.G. § 2G2.2, Application Note 1. *See generally United States v. Polson*, 285 F.3d 563, 567 (7th Cir. 2002) ("[T]he Government need establish only two instances of sexual abuse to show 'a pattern of activity....'"). There is no time-limit on the sexual conduct that a court may consider in determining whether defendant engaged in a pattern of activity involving sexual abuse or exploitation of a minor. *See United States v. Lovaas*, 241 F.3d 900, 903-04 (7th Cir. 2001) (holding that "decades-old" sexual misconduct was relevant conduct that could support increase in offense level on ground of pattern

of sexual activity). See also *United States v. Woodward*, 277 F.3d 87, 91 (1st Cir. 2002).

Whether the Court finds that the enhancement under § 2G2.2(b)(4) applies is entirely independent of defendant's criminal history category calculations. See U.S.S.G. § 2G2.2, Application Note 2 ("Prior convictions taken into account under subsection (b)(4) are also counted for purposes of determining criminal history points pursuant to Chapter Four, Part A (Criminal History)"). See also *United States v. Astore*, 2002 WL 31553939, at *1 (9th Cir. Nov. 14, 2002) (unpublished) (rejecting defendant's argument that the district court's "five-point enhancement for a pattern of activity under U.S.S.G. § 2G2.2(b)(4) is impermissible double counting").

As the Presentence Investigation Report points out, Application Note 2 of § 2G2.2 suggests that "an upward departure may be warranted if the defendant received the enhancement under subsection (b)(4), but that enhancement does not adequately reflect the seriousness of the sexual abuse or exploitation involved." U.S.S.G. § 2G2.2, Application Note 2 (emphasis added). See generally *United States v. Hersh*, 297 F.3d 1233, 1251 (11th Cir. 2002) (affirming district court's ruling that "the serious nature of [defendant's] twenty-year history of sexual predation, abuse and exploitation [justified an upward departure even though] Counts 6-9 already incorporated a five-level increase for seriousness under § 2G2.2(b)(4)"); *United States v. Stewart*, 201 F.3d 442 (6th Cir. 1999) (unpublished) (upholding a district court's additional two-level departure).

If this Court concludes, as the government believes it will, that defendant on two or more occasions sexually abused or exploited a minor, then the 5-level enhancement provided for in § 2G2.2(b)(4) applies. This enhancement, however, only requires proof of <u>two</u> instances of sexual abuse or exploitation. See 2G2.2(b)(4); *Polson*, 285 F.3d at 567 ("[T]he Government need establish only two instances of sexual abuse"). Defendant's history of sexually exploiting minors, however,

-14-

is much more serious than that. Section 2G2.2(b)(4) simply fails to account for the <u>multiple</u> times defendant sexually abused and molested two children during a period spanning approximately three years. The government respectfully request that this Court, pursuant to § 2G2.2's Application Note 2, therefore depart 3 levels upward–from a level 37 to a level 40. *See generally United States v. Hersh*, 297 F.3d 1233, 1251 (11th Cir. 2002) (holding that 10-level upward departure for defendant who molested young boys for extended period of time was not abuse of discretion). *See also United States v. Tampico*, 297 F.3d 396, 404 (5th Cir. 2002) (3-level increase for sexual molestation of "numerous children").

## IV. DEFENDANT CAUSED EXTREME PSYCHOLOGICAL INJURY TO MINORS.

Sentencing Guideline 5K2.3 provides that "if a victim or victims suffered psychological injury much more serious than that normally resulting from commission of the offense, the Court may increase the sentence above the authorized guideline range. In this case, defendant's crime goes far beyond possessing and distributing child pornography. He used the pornography as a weapon–a tool for sexually exploiting children and caused them severe psychological injury as a result. In fact, the female child victim that defendant molested is currently undergoing psychological treatment due to the extreme trauma that defendant's multiple acts of molestation caused her. Defendant's cousin also has undoubtedly suffered and will continue to suffer as a result of defendant's abuse. The defendant's victims have lost their sense of security, self-confidence, and innocence that children deserve and which our criminal laws aim to protect. The defendant's repeated requests that these children touch his genitals and allow him to touch their genitals constitutes extremely abusive conduct enacted for the sole purpose of satiating defendant's sexual urges. In order to fulfill these urges, defendant took advantage of his victims' innocence and gullibility. He lied to his victims and

deceived them regarding the most personal of subjects and used their trust to commit humiliating and degrading forms of sexual abuse. Their suffering has been and will continue to be extreme. Accordingly, an upward departure of two levels is warranted–from a level 40 to a level 42.

## V. THE TYPE OF CHILD PORNOGRAPHY DEFENDANT POSSESSED AND DISTRIBUTED IS UNUSUALLY HEINOUS, CRUEL, BRUTAL, AND DEGRADING.

A district court may depart upward from the applicable guideline range and increase a defendant's sentence if "the defendant's conduct was unusually heinous, cruel, brutal, or degrading to the victim." Guideline §5K2.8. Although most often applied in situations involving brutal or torturous acts, the guideline is clearly written in the disjunctive, therefore an upward departure is warranted for "unusually degrading" conduct distinct from brutal behavior. *See United States v. Sherwood*, 98 F.3d 402, 412 (9th Cir. 1996) (forcing victim to disrobe and then taking photographs is degrading within §5K2.8, even if no brutality involved).

The conduct of the defendant in this case warrants an upward departure under guideline §5K2.8 because the overwhelming number of child pornography images he possessed included images of infants and children in bondage, being tortured, violently raped, and prodded sexually by foreign objects. Although all child pornography is heinous, cruel, and degrading, the images defendant possessed were unusually degrading and featured children being abused in unusually heinous, cruel, and brutal ways. Accordingly, an upward departure of two levels is warranted–from a level 42 to a level 44.

## VI. DEFENDANT POSSESSED 27,000 IMAGES OF CHILD PORNOGRAPHY.

Pursuant to Application Note 2 of § 2G2.4, defendant's sentence should be increased beyond the applicable guideline range due to the enormous number of child pornography images that defendant possessed and had available for distribution on his computer at the time of arrest. Application Note 2 specifically states that "[i]f the offense involved a large number of visual depictions, an upward departure may be warranted, regardless of whether subsection (b)(2) applies." Subsection (b)(2) provides for a two-level increase if defendant possessed ten or more images of child pornography. Here, the defendant had over 200 images under his bed and had over 27,000 on his computer. Accordingly, the government respectfully request that this Court, pursuant to § 2G2.4's Application Note 2, depart three levels upward–from a level 44 to a level 47.

## VII. CONCLUSION

For the reasons discussed above, the government respectfully requests that the Court depart upward from the applicable guideline range for defendant Philip Michael Sebolt and sentence defendant within the range that he would be if his offense level was 47 and his Criminal History Category was VI–a sentence of life imprisonment.

Respectfully submitted,

PATRICK J. FITZGERALD
United States Attorney

By: _____
VALARIE HAYS
Assistant U.S. Attorney
United States Attorney's Office
219 South Dearborn Street
Chicago, Illinois 60604
(312) 353-5356

**CERTIFICATE OF SERVICE**

It is hereby certified that service of this **GOVERNMENT'S MOTION FOR UPWARD DEPARTURE** has been made on defendant by mailing a copy on this 2nd day of March 2004, via facsimile:

Michael D. Walsh
(708) 293-1402

By: _____
VALARIE HAYS
Assistant United States Attorney
219 S. Dearborn Street 3rd Floor
Chicago, Illinois  60604
(312) 353-5356