1

```
1                    UNITED STATES DISTRICT COURT
                     NORTHERN DISTRICT OF ILLINOIS
2                         EASTERN DIVISION

3    UNITED STATES OF AMERICA,        )
                                      )
4                    Plaintiff,       )
                                      )
5         vs.                         )  No. 02 CR 648
                                      )
6    PHILIP MICHAEL SEBOLT,           )  Chicago, Illinois
                                      )  March 11, 2003
7                    Defendant.       )  10:30 o'clock a.m.

8                    TRANSCRIPT OF PROCEEDINGS -
                 Arraignment/Pretrial Conference
9           BEFORE THE HONORABLE RONALD A. GUZMAN

10
     APPEARANCES:
11
     For the Government:        HON. PATRICK J. FITZGERALD
12                              United States Attorney
                                219 South Dearborn Street, Suite 500
13                              Chicago, Illinois  60604
                                (312) 353-5300
14                              BY:  MS. VALARIE HAYS

15   For the Defendant:         MS. ELAINE ODEH
                                16 East Green Street
16                              Bensenville, Illinois  60106
                                (630) 766-0520
17

18   Also Present:              FBI Agent Scott McDonough

19

20

21   Reported By:               GERALDINE M. MONAHAN, CSR, RPR
                                Official Court Reporter - Retired
22
     Transcribed By:            COLLEEN M. CONWAY, CSR, RMR, CRR
23                              Official Court Reporter
                                219 South Dearborn Street, Room 2524-A
24                              Chicago, Illinois  60604
                                (312) 435-5594
25                              colleen_conway@ilnd.uscourts.gov
```

1          (Defendant in.  Proceedings heard in open court:)

2               THE CLERK:  02 CR 648, United States of America

3     versus Sebolt.

4               MS. HAYS:  Good morning, Your Honor.

5               Valarie Hays on behalf of the United States.

6               MS. ODEH:  Good morning, Judge.

7               Elaine Odeh on behalf of Phil Sebolt, who's present,

8     in custody.

9               THE COURT:  What's the status of the case?

10              MS. HAYS:  Your Honor, I believe we need to set a new

11    trial date and also do the arraignment on the superseding

12    indictment and discuss -- I believe this is also a pretrial

13    conference, so --

14              THE COURT:  I am sorry.  I am having trouble hearing

15    you.

16              MS. HAYS:  And also a pretrial conference.  So, I

17    have proposed jury instructions, and, hopefully, we can --

18    maybe can talk about it before the motions *in limine* the

19    defense filed.

20              THE COURT:  We have a superseding indictment?

21              MS. HAYS:  Yes.

22              THE COURT:  Counsel, have you received a copy of the

23    superseding indictment?

24              MS. ODEH:  Yes, Judge.  We have received a copy of

25    it, and we've reviewed it with the defendant.

1         THE COURT:  Do you wish your formal reading?

2         MS. ODEH:  Judge, no.  We are waiving formal reading.

3    There'll be pleas of not guilty.

4         THE COURT:  And will the Assistant United States

5    Attorney please inform the defendant of the maximum penalties

6    that could be imposed under the statute with the superseding

7    indictment.

8         MS. HAYS:  Yes, Your Honor.

9         For Count 1, he faces a maximum of 15 years and a

10   $250,000 fine.  For Counts 2 and 3, he faces a maximum of 15

11   years, a $250,000 fine.  And for Count 3, he -- or Count 4, a

12   ten-year mandatory minimum, 20 years maximum, and a $250,000

13   fine.

14        THE COURT:  Okay.  You have motions *in limine* you

15   want to take up?

16        MS. HAYS:  Yes, Your Honor.

17        MS. ODEH:  Yes, Judge.

18        THE COURT:  Okay.  What are they?

19        MS. ODEH:  Judge, the -- we have filed first -- our

20   first motion *in limine* is with regard to stains on pictures and

21   the use of gloves.

22        Does Your Honor have copies of the motions?  And the

23   government filed a response.  There's two motions *in limine*.

24        THE COURT:  Yes, I do.

25        MS. HAYS:  Your Honor, for the first motion *in limine*

1    regarding the stains and the gloves, the government has no

2    intention at this time of introducing that evidence, nor are we

3    planning on using gloves at trial.  We will have the

4    photographs and plastic covers.

5           MS. ODEH:  And then we have no objection to the use

6    of the plastic covers.

7           THE COURT:  All right.  So based upon the

8    government's representation that they do not intend to use the

9    gloves, therefore, the stains, this motion is moot.

10          What's the next one?

11          MS. ODEH:  The next one is a motion *in limine* asking

12   to prohibit the introduction of prior bad acts, specifically

13   any evidence or testimony relating to molestation of the

14   defendant's cousin.

15          MS. HAYS:  Your --

16          MS. ODEH:  It's -- there's some -- what we're asking

17   is that there be no testimony; that there are portions in the

18   defendant's confession where it's mentioned and there are

19   portions in some computer chats, I believe, the government

20   intends to introduce.  We'd ask that those be deleted, and that

21   no reference be made to Andrew or the molestation.

22          MS. HAYS:  Your Honor, the government strongly

23   opposes the motion.

24          The evidence of the molestation is direct evidence in

25   this case.  It corroborates his confession in which he admits

1    to possessing and distributing child pornography.

2          In that same confession, he admits to molesting his

3    cousin.  His cousin, who's been interviewed, has confirmed the

4    molestation.

5          We're not necessarily calling his cousin, but we do

6    plan to introduce the -- we would like to introduce the full

7    confession; in addition, the chats where he also discusses

8    molesting his cousin, in addition to following children in

9    parks and strategies for getting the children not to say

10   anything once they're molested, talking about not wanting the

11   police to find out.  They're very key conversations.

12         In addition, alternatively, they're admissible under

13   404(b).  It shows all of them, motive, opportunity, intent,

14   preparation, plan, knowledge.

15         MS. ODEH:  Judge, if I could just respond to the

16   arguments of the government?

17         I know in their response to our motion that it was

18   first asserted the evidence is inextricably intertwined with

19   the allegations, and it's not.  These allegations -- the

20   charges have nothing whatsoever to do with the molestation or

21   with the cousin.  None of the -- none of those pictures are --

22   have to do with the cousin, none of the -- the distribution or

23   the advertising.  The charges have nothing to do with the

24   cousin.

25         They would only be admitted -- any of this testimony

1    or evidence would only be admitted to show the defendant's

2    propensity toward such types of conduct, and there's the

3    four-prong test to determine the admissibility.

4           First, the evidence must be directed toward

5    establishing a matter in issue other than the defendant's

6    propensity, and I believe it only will establish propensity, if

7    anything at all.

8           Second, the evidence has to show the other act is

9    similar enough and close enough in time to be relevant to the

10   matter in issue.  It has to do with deviant sexual behavior,

11   but other than that, it's not similar enough.  It doesn't have

12   to do, again, with any of the charges.

13          And I don't believe the government can show that it

14   was close enough in time.  I think that their evidence with

15   regard to the cousin would show that anything that took place

16   would have been years ago.  It wouldn't have been at the same

17   time.

18          THE COURT:  Years ago?

19          MS. ODEH:  Third --

20          MS. HAYS:  Well, not years ago.  I believe it was

21   fairly recently, within the last couple years.  But --

22          THE COURT:  What is the evidence of that?  I mean, if

23   it was ten years ago, will you agree it's not relevant?

24          MS. HAYS:  It wasn't ten years ago, but, no, I would

25   not agree it's not relevant because --

1          THE COURT:  So even if it was ten years ago, you'd
2     say this is relevant?

3          MS. HAYS:  Well, because it corroborates his
4     confession, Your Honor, in his written confession, which the
5     defense either explicitly or implicitly has to refute the
6     truthfulness --

7          THE COURT:  A confession with respect to irrelevant
8     conduct doesn't need to be corroborated.  Only those portions
9     of the confession that are with respect to relevant conduct
10    need to be corroborated.

11         MS. HAYS:  If he's --

12         THE COURT:  So let's back up a second.

13         MS. HAYS:  Okay.

14         THE COURT:  What exactly is the probative value of
15    this evidence?  Evidence that he molested his -- how old is his
16    nephew?

17         MS. HAYS:  He's ten now.  It started when he was --

18         MS. ODEH:  12, he is 12.

19         MS. HAYS:  Or 12.

20         THE COURT:  Okay.  So he molested his nephew.

21         MS. HAYS:  So it was two years ago.  He stopped when
22    he was ten.

23         THE COURT:  Okay.  So two years ago, he molested his
24    nephew.  What does that tend to prove with respect to the
25    elements charged in this case?

1    MS. HAYS:  His sexual preference for young children
2    makes it more likely that he knowingly distributed and
3    possessed child pornography.
4        THE COURT:  Okay.  What else?  It doesn't prove --
5    that's motive, right?
6        MS. HAYS:  That's motive, yes.
7        THE COURT:  Okay.  Doesn't prove opportunity, right?
8        MS. HAYS:  No.
9        THE COURT:  Doesn't prove course of conduct?
10       MS. HAYS:  No.
11       THE COURT:  Okay.  Anything else?
12       MS. HAYS:  No, but I -- I do believe that if the
13   defense is going to suggest that he wasn't telling the truth at
14   the time he made his written confession, the fact that we can
15   corroborate --
16       THE COURT:  Different story, different story.  We'll
17   take that up next.
18       MS. HAYS:  Okay.
19       THE COURT:  But right now, if there is no such
20   attempt to discredit the confession by the defense, we have
21   here testimony as to an act of sexual misconduct that took
22   place two years before which is being proffered to prove motive
23   for the possession of child pornography.
24       MS. HAYS:  And it's not just the testimony of his
25   cousin.  The computer chats have that in addition to discussing

1    following children in parks.  It's -- which goes to the same

2    motive and -- it's the same argument that applies, but it's

3    more expansive than just the cousin.

4            THE COURT:  I am not sure I've -- it's more expansive

5    than what's --

6            MS. HAYS:  For example, I -- in my response, I put

7    three samples -- on page 4, if Your Honor wants to look at

8    those, I mean, I think it's a good example of what --

9            THE COURT:  Why don't you tell me about them.

10           MS. HAYS:  Well, the first ones talk about

11   approaching a girl on a bus and then telling her he needs to do

12   a project, and then taking pictures of the girl, who was under

13   age ten, taking them of her naked and then performing pretty

14   explicit sexual acts on her.  And this, then, is actually

15   relevant to the child pornography because he's actually talking

16   about making child pornography.

17           THE COURT:  Well, okay, that is relevant to child

18   pornography, but that's not what we're talking about.  We're

19   talking about -- I mean, as I understand the motion *in limine*,

20   is to bar testimony or evidence of prior molestation of his

21   nephew.  Right?

22           MS. HAYS:  And the molestation --

23           MS. ODEH:  Correct.

24           MS. HAYS:  -- is very intertwined.  I mean, he talks

25   about it repeatedly in these chats.

1      MS. ODEH:  Judge, if I could just respond to that,
2  then this might clear it up.
3      There -- in the chats, at least the parts that we've
4  been tendered, there is a lot of chats back and forth about
5  ways to molest and things like that, and how to get children --
6  and I'm not -- we're not asking to exclude any of that.
7  There's very small portions that refer to Andrew, the cousin,
8  and something that may or may not have taken place with Andrew.
9  Those are the only portions, not the whole thing, not all the
10  chats we're not asking be excluded; only references to Andrew
11  and references to molestation of Andrew.  That's all.
12      MS. HAYS:  I don't believe Andrew's name specifically
13  is ever mentioned.
14      MS. ODEH:  But the "cousin."
15      MS. HAYS:  It says "cousin."
16      THE COURT:  And I take it your argument would be that
17  to present evidence of this prior act in order to prove motive
18  would be nothing more than to show propensity?
19      MS. ODEH:  That's all it would be, especially
20  because --
21      THE COURT:  What's the difference --
22      MS. ODEH:  -- the government --
23      THE COURT:  -- between motive and propensity, then?
24      MS. ODEH:  Judge, I think motive is a person's reason
25  for doing something.  So if his motive -- if the government

1  wants to show his reason for having child pornography is

2  because he has an attraction to young boys, they can do that

3  through the pictures, through the use of the chats.  There's

4  plenty of evidence --

5              THE COURT:  Why can't they do it --

6              MS. ODEH:  -- they can show that --

7              THE COURT:  Why can't they do it by showing that

8  he -- other proof of his motives, such as actual acts of

9  molestation?

10             MS. ODEH:  Because I -- because the prejudice that

11 that would create is far outweighed --

12             THE COURT:  Well, I am not -- I haven't gotten to

13 prejudice yet.  First -- I am still back a step before.

14             MS. ODEH:  The other thing that --

15             THE COURT:  We are trying to determine how probative

16 this is --

17             MS. ODEH:  The other thing --

18             THE COURT:  -- to a legitimate issue, which is

19 motive, and you are telling me it's not motive, it's

20 propensity, and propensity is a no-no, and I am trying to

21 figure out where we draw the line and which is which.

22             MS. ODEH:  Judge, I think there may be a close line

23 in some cases, and this one I don't think it is.

24             And I would also add that the government's -- the

25 evidence that they've tendered, in particular, statements from

```
 1    Andrew, would indicate that this -- if it took place, took
 2    place when Andrew was in second grade, which I think would make
 3    him -- I don't know -- something like seven years old.  So, it
 4    wasn't two years ago.  It was more like five years ago.
 5              MS. HAYS:  Our evidence would show that it started
 6    when he was young and continued until he was ten.
 7              THE COURT:  What evidence do you have of that?
 8              MS. HAYS:  We haven't decided whether we want to call
 9    the cousin for other reasons, but in addition to the cousin, in
10    his written confession, he talks about ages.  And also in the
11    chats, he talks about ages.
12              THE COURT:  What does he say in his written
13    confession about ages and in the chats about ages?  What's your
14    evidence that it continued up till two years ago?
15              MS. HAYS:  I can -- I don't want to misquote it,
16    so -- I believe he said in his written confession that he has
17    been molesting his ten-year-old cousin for the last four years.
18              THE COURT:  His ten-year-old cousin for the last four
19    years.
20              MS. HAYS:  Four years.
21              THE COURT:  And the last four years would -- and when
22    did he make that statement?
23              MS. HAYS:  In April, when he was --
24              MS. ODEH:  In --
25              MS. HAYS:  -- arrested.  I'm sorry.
```

1       MS. ODEH:  July.

2       MS. HAYS:  In July of 2002.

3       MS. ODEH:  Almost a year ago.

4       THE COURT:  Well, that would indicate that he was

5    doing it up until the time he was arrested, wouldn't it?  Isn't

6    that what that says, for the last four years?

7       MS. ODEH:  Yes, Judge, but I --

8       THE COURT:  Four years --

9       MS. ODEH:  And I don't want to --

10      THE COURT:  -- instead of taking --

11      MS. ODEH:  I really don't want to confuse that, but I

12   -- I think that portion would only be admissible if the

13   defendant got up and said that --

14      MS. HAYS:  Wait.

15      MS. ODEH:  -- he's never molested anyone and his

16   confession is all a lie.  That --

17      THE COURT:  I am just trying to determine up till

18   what point in time the conduct has occurred and what evidence

19   there is to establish the conduct occurred up till that point

20   of time, because that's also something I have to take into

21   consideration, that is, how solid the evidence is and how near

22   in time to this particular crime that's alleged in the

23   superseding indictment --

24      MS. ODEH:  Well --

25      THE COURT:  -- the occurrence is.  So, is his

1   statement that for the last four years he has been doing

2   this -- my reading of that is that he was doing it up until the

3   time he was arrested or four years before.

4           MS. ODEH:  That statement would indicate that, but

5   the statement from Andrew that he made to the agents would

6   indicate that it was only up until Andrew was about seven years

7   old.  So it's a contradictory statement.

8           I don't know -- I don't know which one is true.  But

9   the other material that we've received shows that it was up

10  until he was seven years old and then it stopped.

11          And our position is that -- this -- bringing in

12  evidence of Andrew is just going to be:  Is this guy a child

13  molester or is he not?  And it's not about what he's actually

14  charged with, which has nothing to do with molesting.  It's not

15  what he's charged with here.

16          THE COURT:  Well --

17          MS. ODEH:  Judge, if I could, by way of analogy, I

18  think it would be -- if a person was charged with distributing

19  drugs and the government wanted to produce evidence that two

20  years ago, they used some drugs to show that they have a

21  motive, it just doesn't make any sense.  It's only admitted to

22  show they're a bad guy.

23          MS. HAYS:  Your Honor, that's not why it's being

24  admitted.  It's being admitted because the defendant wrote

25  about it in his confession.  It goes to motive.  And they're

1    going to challenge his -- the truthfulness of his confession.

2    He's telling the truth about part of it makes more like he's

3    telling the truth about the charged offenses, and it's very

4    indicative of his --

5            THE COURT:  Well, it seems to me the difference

6    between motive and proof of motive and mere propensity really

7    boils down to this, how strong is the connection between an

8    actual act of molestation of a minor and the act of possessing

9    and distributing child pornography.  That's really the issue.

10   If there is a strong connection between the two, then it's

11   motive.  If there isn't, then it's just a slander on his

12   character, trying to prove propensity to commit something

13   similar.

14           Unless somebody has more information for me on that,

15   I'll have to take it under consideration.

16           MS. HAYS:  I think that's all, Your Honor.

17           THE COURT:  Okay.  What else?

18           MS. HAYS:  Your Honor, I have prepared proposed jury

19   instructions.  I have given the defense a copy.

20           I've also prepared proposed forfeiture instructions

21   that I believe say they're going to sign a waiver of the

22   forfeiture, and I can give that to you, too.

23           THE COURT:  I don't believe I have the jury

24   instructions.  Have you tendered those to the Court?

25           MS. HAYS:  No.

1          THE COURT:  Okay.  Let me --

2          MS. HAYS:  I can do so now.

3          THE COURT:  -- see them.

4          MS. ODEH:  And, Judge, we did review the waiver with

5     Mr. Sebolt before court this morning.

6          THE COURT:  I am sorry?

7          MS. ODEH:  We -- I'm sorry, Judge.

8          We reviewed the waiver with Mr. Sebolt before court

9     this morning regarding the forfeiture instructions, and he has

10    signed it.

11        (Counsel conferring.)

12         THE COURT:  Have you folks exchanged instructions?

13         MS. ODEH:  Judge, the -- we hadn't prepared any.

14    I --

15         THE COURT:  Why not?

16         MS. ODEH:  I wasn't -- I was under the assumption

17    that they weren't even discussed until an instruction

18    conference before the case went to the jury.

19         THE COURT:  No.  We usually like to do it ahead of

20    time.

21         MS. ODEH:  I did -- I can tell Your Honor I did

22    briefly read through the government's instructions, and I

23    don't -- I didn't see anything that struck me that we would

24    submit anything extra.  It looked like it was all there.

25         THE COURT:  Where do you start the elements

1    instruction?

2           MS. HAYS:  I believe it's around 13, Your Honor.  13.

3       (Counsel conferring.)

4           THE COURT:  The third element, why is that there?

5           MS. HAYS:  Well -- for 13?

6           THE COURT:  Uh-huh.  I guess what I am asking is

7    what's the difference between the first element and the third?

8    Isn't one subsumed in the other?

9           MS. HAYS:  I -- my understanding is that there could

10   be child pornography that wasn't necessarily sexually explicit

11   conduct.  I don't know that --

12          THE COURT:  Okay.  Well, if we're charging him with

13   child pornography, then why do you have -- and child

14   pornography does not include, necessarily, sexually explicit

15   conduct, why do you need to prove as an element sexually

16   explicit conduct and knowledge of it?

17          MS. HAYS:  It's a good question, Your Honor.  I --

18   I've done a lot of research --

19          THE COURT:  That's about as far as I can --

20          MS. HAYS:  -- and there's not that much case law on

21   this, and so I got these instructions from -- or close to them

22   from an AUSA who just recently tried a case in another

23   district.  But in terms of getting --

24          THE COURT:  Well, what does the statute say?  What's

25   the statute?

1            MS. HAYS: "Knowingly possessed material that

2   contained" --

3            THE COURT: What number?

4            MS. HAYS: "Knowingly possessed material that

5   contained images of child pornography."

6            THE COURT: What's the statute?

7            MS. HAYS: 2252A -- big A -- then (a)(5)(B).

8            THE COURT: 2252A?

9            MS. HAYS: The big A.

10           THE COURT: Yes, the big A.

11           MS. HAYS: And then (a)(5)(B).

12           THE COURT: Capital A, little a -- (5)(B)?

13           MS. HAYS: Yes.

14           THE COURT: Okay. So, where does it define "child

15   pornography"?

16           MS. HAYS: Do you know where it defines "child

17   pornography"?

18           AGENT McDONOUGH: Chapter A109.

19           MS. HAYS: Chapter A109.

20           AGENT McDONOUGH: No, B.

21           THE COURT: I am sorry. Chapter what?

22           AGENT McDONOUGH: I believe that's the --

23           MS. HAYS: Chapter what?

24           AGENT McDONOUGH: Chapter A109.

25           MS. HAYS: A? Chapter A?

1          AGENT McDONOUGH:  A109.

2          THE COURT:  What's Chapter A109?  What's the

3   citation?

4          MS. HAYS:  I've --

5          AGENT McDONOUGH:  I am not --

6          THE COURT:  Is it Title 18?  Title 21?  Title what?

7   Where are we?

8          AGENT McDONOUGH:  Title 18.

9          THE COURT:  Title 18 what?

10         AGENT McDONOUGH:  I do not know about --

11         THE COURT:  You guys are prosecuting a child

12   pornography case, right?

13         MS. HAYS:  Yes.

14         THE COURT:  You got to know what --

15         MS. HAYS:  I just don't know it offhand, Your Honor.

16         THE COURT:  -- the citation is, shouldn't you?

17         MS. HAYS:  Yeah.  If I -- I don't know the --

18         THE COURT REPORTER:  Can he state his -- counsel, can

19   I ask you --

20         MS. HAYS:  Yes.  Scott McDonough, M-c-D-o-n-o-u-g-h.

21      (Counsel conferring.  Pause.)

22         THE COURT:  "Children and minors," this index.  So

23   far, I have run into four references in the index, back and

24   forth.  Let's see if it actually has anything.  This must be in

25   my -- there we go.  Obscenity, Sexual Exploitation, generally,

1    Table of Contents -- let's see.

2              MS. HAYS:  Your Honor, page 866 of the Code book has

3    some definitions.

4              THE COURT:  It depends on which version you're

5    looking at.  What section is it?  Tell me.

6              MS. HAYS:  It's Chapter 109A, Section 2241 of Title

7    18.

8              THE COURT:  Title 18, Section 2241?

9              MS. HAYS:  Yes.

10             MS. ODEH:  It's -- no, that's not it.  That's not --

11   that's for sexual abuse.

12             MS. HAYS:  We're looking for child pornography.

13             THE COURT:  Wait.  Section 2241 of --

14             MS. HAYS:  Here we -- Section 2246, Your Honor.

15             THE COURT:  Thank you.

16             MS. HAYS:  There we go.  There's a lot of

17   definitions.

18             THE COURT:  It doesn't really define "child

19   pornography" now, does it?

20             MS. HAYS:  No.  It gives an idea of what sexually

21   explicit conduct might be.

22        (Counsel conferring.)

23             THE COURT:  Are you charging him under 2252?

24             MS. HAYS:  2252A.

25             THE COURT:  Which is different from 2252.  2252 talks

1    about depictions involving sexually explicit conduct.  2252A

2    talks about child pornography, leading me to believe that these

3    are two different things.

4         Okay.  We need to find the definition of "child

5    pornography," not the definition of "sexually explicit

6    conduct."

7         Defense have any idea where "pornography," "child

8    pornography" is defined in the statute?

9         MS. ODEH:  Judge, no.  I -- my file is getting thick,

10   and, of course, today I didn't bring it, but I have copies of

11   all the relevant statutes, so I don't -- I don't know.

12        THE COURT:  Well, why don't we break and you all come

13   back when you have this information, because I don't know how

14   we can even start to discuss this if you folks can't define the

15   terms in the indictment.

16        I don't know how I can -- I mean, the jury

17   instructions I want to look at right now are the elements

18   instructions -- that's the important thing to get straight when

19   we start this trial -- and we can't get past the first one.

20        There's no definition in here, in the instructions,

21   of "child pornography"?

22        MS. HAYS:  No, Your Honor.

23        THE COURT:  How is the jury going to know whether or

24   not material that you have proved the defendant had or

25   transmitted contained child pornography?

1          MS. HAYS:  There's -- yeah.  We have definitions,

2     actually, with the conduct.

3          THE COURT:  You're sure you're charging him under --

4          (Government counsel conferring with agent.)

5          MS. HAYS:  It's the definition?

6          AGENT McDONOUGH:  Yeah, but let me find it word for

7     word in here.

8          MS. HAYS:  My understanding is that "child

9     pornography" is "showing sexually explicit conduct involving

10    children," but I -- I agree that there should -- actually, I'm

11    sorry, Your Honor.  Instruction No. 19 does define it.

12          THE COURT:  Ah, okay.

13          MS. ODEH:  Does it?

14          THE COURT:  Instruction 19.

15          MS. HAYS:  Or instruction No. 22.

16          THE COURT:  22.

17          (Counsel conferring.)

18          THE COURT:  So "child pornography" is defined as

19    showing a child and sexually explicit conduct.

20          MS. HAYS:  Yes.  And, Your Honor, that can be found

21    in Section 2256-8, the definition of "child pornography."

22          THE COURT:  Yes, I see the reference down here.

23          MS. HAYS:  Yeah, in the instructions.

24          THE COURT:  So then my question, then, I guess, does

25    stand, which is why do you need this third element?

1          MS. HAYS:  It does seem repetitive.  I can strike
2     that.
3          THE COURT:  I would think so.  It seems to me you're
4     proving it twice.
5          (Pause.)
6          THE COURT:  Well, let's back up.  I can see why you
7     might want to make it clear to the jury that "knowingly
8     possessing child pornography" includes the knowledge of all the
9     elements that define "child pornography."  That would be:  3,
10    visually explicit -- sexually explicit conduct; 4, that the
11    child is under age; 5 -- well, you might want to -- if we're
12    going to keep these in, you might want to try combining 3 and
13    5.  I don't know what -- what would you have -- one image
14    possessed -- contained a visual depiction of sexually explicit
15    conduct and then, 5, that the defendant knew that producing,
16    the producing of such visual depiction involved the use of a
17    minor engaging in sexually explicit conduct.
18         Do you see what I am saying?  Does that seem a little
19    redundant to you?  Or is there a particular reason for that?
20         MS. HAYS:  We can combine 3 and 5.
21         THE COURT:  Redundancy?  Well, I guess what I am
22    asking you to do is go through the statute, go through this.
23    Don't just take it from somebody who gave it to you from some
24    other district.  Go through it --
25         MS. HAYS:  Right.

1          THE COURT:  -- and see what you think the essential

2     elements are and how they should be shown in here.

3          MS. HAYS:  Okay.

4          THE COURT:  I mean, the longer this list gets, the

5     harder it is for you to prove your case, you know.

6          MS. HAYS:  Yes.

7          THE COURT:  Your instruction 15 seems to put it

8     together quite a bit tighter than that.

9          MS. ODEH:  Judge, if I could, with regard to that

10    instruction, the defendant is charged with -- I think the --

11    Counts 2 and 3 say "knowingly transported and shipped a visual

12    depiction."  I don't think "or caused to be transported or

13    shipped" should be in there.

14          "Knowingly transported or shipped" is what he's

15    charged with.  I think -- yeah, the charge says "knowingly

16    transported and shipped child pornography."

17          MS. HAYS:  We can strike that.

18          THE COURT:  I am sorry?

19          MS. HAYS:  We have no objection to striking that.

20          THE COURT:  Really?

21          MS. HAYS:  That or "caused to be."

22          THE COURT:  So what does that mean, that he had to

23    physically take it across the lines if he's the one who

24    actually transported it and shipped it?  What?

25          MS. HAYS:  Well, I mean, I think transported it by

1   distributing it through the computer.

2          THE COURT:  Well, is that causing it to be

3   transported or is that transporting it?

4          MS. HAYS:  I -- well, I guess it could be causing to

5   be transported.

6          THE COURT:  I am sorry.  I can't hear you.

7          MS. HAYS:  I think it -- I guess it could be causing

8   to be transported.

9          THE COURT:  Well, it's your instruction.  You tell

10  me.

11         MS. HAYS:  Yeah.  Well -- I guess we'd like to have

12  it in.

13         MS. ODEH:  Judge, my position is that that's an

14  alternative.  I think it has to be one or the other.  Either he

15  shipped it or caused it.  He transported and shipped it or he

16  caused it to be transported and shipped.  I don't --

17  alternatively, that's not what he's -- he's not charged in the

18  alternative, and I don't think the instruction should be worded

19  that way.

20         THE COURT:  You think the indictment precludes it?

21         MS. ODEH:  I think it does.

22         THE COURT:  Do you have a case that says that?

23         MS. ODEH:  No, Judge, I don't.  Unfortunately, I

24  didn't know we were going to be going through the instructions

25  today.

1    THE COURT:  Well, I will give you time to get me a

2 case.

3    MS. ODEH:  All right.

4    THE COURT:  Fine.  I suggest the prosecution find

5 cases also.  Can you find -- can you convict on "causing to be

6 transported" when you've only charged "transported," since the

7 word, you know, "transported" appears in a lot of statutes?

8 You probably can find some case law on that.

9    MS. HAYS:  Okay.

10    THE COURT:  My initial guess is that I think it's all

11 quite all right to leave it in there because the indictment

12 does make it clear that we're talking about transporting by

13 computer, by means of a computer, and unless one takes that to

14 mean that he placed the image physically in the computer and

15 then walked the computer across the state line, which I think

16 is an unnatural reading -- a natural reading would be that he

17 sent it via computer, which would be the same as "shipping or

18 causing to be shipped" -- I think the indictment includes both

19 the way it's worded.

20    But I would certainly like to see some case law on

21 that, if you folks think it's an issue that needs to be ruled

22 upon.

23    By the way, if there's an objection to any of the

24 government's proposed instructions, I would like an alternative

25 instruction --

1      MS. ODEH:  Yes.

2      THE COURT:  -- submitted.

3      MS. ODEH:  Judge, with regard to instruction No.

4  16 --

5      THE COURT:  I am looking at it.

6      MS. ODEH:  -- the second -- he -- that would be the

7  same thing.  That's -- he's charged with "offered to display,

8  distribute, and reproduce," and this gives every possible

9  display or offer, receive, exchange, buy, produce, display,

10  distribute, or reproduce.  That's not even close to what he's

11  charged with.

12      I think that echos the words -- all the words in the

13  statute.  That's not what he's charged with, any of those

14  alternatives.  He's charged with offering to display,

15  distribute, and reproduce.  And I think it needs to be specific

16  that the government needs to prove that he offered to display,

17  distribute, and reproduce, and that's what the instruction

18  should say.

19      MS. HAYS:  Want us to look for case law on that, too,

20  Your Honor?

21      THE COURT:  Yes.  Well, I think you are getting a

22  little more --

23      MS. HAYS:  Afield?

24      THE COURT:  I think you are getting a little more of

25  a substantive difference there.  Receive and display,

1    distribute, and reproduce are --

2              MS. HAYS:  And --

3              THE COURT:  -- seem to be different acts.

4              MS. HAYS:  Yeah.  And I really don't see any problem.

5    I mean, I want to check further with making it match the

6    indictment.

7              THE COURT:  Uh-huh.  I'd actually like to know who

8    writes these things.

9         (Pause.)

10             THE COURT:  Okay.

11             MS. ODEH:  As to 17, Your Honor, I would just ask for

12   an opportunity to submit an alternative definition of

13   "knowingly."  I think there's -- I think there's better ones.

14             THE COURT:  Is this the unmodified Seventh Circuit

15   pattern?

16             MS. HAYS:  Yes, Your Honor.

17             MS. ODEH:  I haven't even looked, frankly, so I'd

18   just like an opportunity to propose an alternative.

19             And same with 18, would be the same issue.  Oh, I'm

20   sorry.  I withdraw that.

21             THE COURT:  I am sorry.  What?

22             MS. ODEH:  I had initially had the same objection to

23   18, but I don't.

24             THE COURT:  What about the sentence that says:  "The

25   United States must show that the defendant need not have

1    specific knowledge as to the actual age of the underage

2    performer"?  Does that make sense to you?

3            MS. HAYS:  It's not very clear, Your Honor.  I can

4    work with us on --

5            THE COURT:  I mean, that has -- puts an affirmative

6    burden upon you to show that he didn't know.  Suppose that they

7    show he did.  Then he's out of it, huh?

8            MS. HAYS:  Yes, Your Honor.  I would like a chance to

9    reword that.

10           THE COURT:  I think you might want to change that.

11           19?

12           MS. ODEH:  Judge, my position on that is it's not

13   even necessary.  I mean, unless we would raise that issue, I

14   don't think it applies.

15           THE COURT:  It's true.  I would give it.  I can see

16   jurors getting confused by that without anyone raising it.

17           MS. HAYS:  Well, we will withdraw 19.

18           THE COURT:  I am sorry?

19           MS. HAYS:  We will withdraw 19.

20           THE COURT:  Why?  I said I was going to give it.

21           MS. HAYS:  Oh.  I thought you said it would cause

22   juror confusion.  I'm -- okay.

23           THE COURT:  No, I don't think so.

24           MS. HAYS:  Okay.

25           THE COURT:  I think it's the other way around.

1           MS. HAYS:  Okay.

2           THE COURT:  I think it eliminates a possible point of

3     confusion that the jury could have, even if no one brings it up

4     specifically.

5           When you use the word -- or phrase "interstate

6     commerce," jurors start thinking of commerce.  That's buying

7     and selling.  That's business.

8           MS. ODEH:  Judge, then I -- my position would still

9     be the second sentence, "In other words, the advertising" --

10    that doesn't need to be there.  The first sentence does it:

11    "In order to prove a violation, the government does not have to

12    show the defendant received a pecuniary gain."

13          THE COURT:  Right.  How does that prejudice your

14    client?  That's absolutely true.

15          MS. ODEH:  That sentence is fine, I think, but the

16    second one --

17          THE COURT:  Well, how does the second one prejudice

18    your client?  That's absolutely true.

19          MS. ODEH:  Because when I read it, it sounds to me

20    like -- if I -- as a juror, if I find that the advertising

21    distribution and possession was simply for a personal reason,

22    okay, then he's guilty.  If I can -- it sounds to me like

23    that's -- that someone who maybe isn't educated on that you

24    have to find these things in instructions 15, 16, and 17 also

25    might look at that sentence and say:  Oh, if he did it for a

1  personal reason, okay, then that's enough.

2          That sentence to me says that's -- that if he had

3  these things for personal reason, then it is advertising

4  distribution and possession.  I don't -- that sentence just

5  is -- I think that confuses it.

6          MS. HAYS:  Your Honor, I don't see that at all.  And

7  the jurors are going to see all the other elements, so I

8  don't see how that could cause confusion.  It just clarifies

9  it, clarifies the first sentence.

10          THE COURT:  I don't see a problem with it.  20?

11          MS. HAYS:  Is 20 okay?

12          MS. ODEH:  I have no problems with 20.

13          THE COURT:  21?

14          MS. ODEH:  No, that's fine.

15          THE COURT:  22?

16          MS. ODEH:  If that's the wording of the statute in

17  22, then I have no objection to it.

18          THE COURT:  Where does "identifiable minor" come in?

19  Is that one of the elements?

20          MS. HAYS:  The -- a minor that the defendant knew was

21  a minor, identifiable.

22          THE COURT:  No.  Where does the phrase that you're

23  defining here, "identifiable minor," where does that phrase

24  come in other than you are defining it?  Is it used as an

25  element in any of the offenses?

1          MS. HAYS:  It's not in the indictment, Your Honor.

2          THE COURT:  No.  Is it used as an element of any of

3     the offenses in your instructions?  In other words, why do we

4     have to define this phrase?

5          MS. HAYS:  The actual phrase "identifiable minor"?

6          THE COURT:  Yes.  Why are we defining it?  Why have

7     an instruction telling the jury this is what an identifiable

8     minor is?

9          MS. HAYS:  Well, it would -- it's just defining

10    "minor" in the -- how the defendant would know it was a minor.

11    But --

12         THE COURT:  It would be defining "minor" what?

13         MS. HAYS:  I mean, the -- there's no -- "identifiable

14    minor" is not any element that we have to prove, but --

15         THE COURT:  Then why do we want to tell the jury what

16    an "identifiable minor" is?

17         There must be some reason for you having included

18    this instruction here.  What was the reason?  We could define

19    "lemonade" for them, too, but there would be no reason in this

20    trial.

21         MS. HAYS:  I thought it just gave clarification of

22    what the minor was, but I can -- we can withdraw it.

23         MS. ODEH:  And it --

24         THE COURT:  Well, unless you can find a reason for

25    it -- I mean, these are your instructions.  You do what you

```
 1   want.
 2              MS. HAYS:  Well, I mean, with Ashcroft --
 3              THE COURT:  You're telling a jury that they're going
 4   to -- I mean, jurors read these things, you know.  They go
 5   through them one by one.  They actually check them off.  If you
 6   ever talk to them, you know, they'll tell you that.
 7              MS. HAYS:  I guess --
 8              THE COURT:  They're going to come to this instruction
 9   and they're going to say:  Oh, gosh.  Is this true?  Was there
10   evidence that there was a mole, a birthmark, or some
11   recognizable feature?
12              And what does it mean that he has to be identifiable,
13   but they don't have to actually identify who he is?
14              MS. HAYS:  I guess it could --
15              THE COURT:  This is another three hours of jury
16   deliberation here, is what we're talking about.
17              MS. HAYS:  I guess --
18              THE COURT:  Is there a reason?
19              MS. HAYS:  I guess the concern, Your Honor, after the
20   Ashcroft case, that we can't --
21              THE COURT:  What's the Ashcroft case?
22              MS. HAYS:  The Ashcroft case says that the government
23   has to prove that it wasn't more -- that it was an actual child
24   used in the photograph as opposed to computer-generated.  So --
25              THE COURT:  Well, then that must be in the elements
```

1  instruction someplace, right?

2          MS. HAYS:  It is.

3          THE COURT:  Where?

4          MS. HAYS:  Well, for -- like No. 15, knew -- "the

5  defendant knew the production of the visual depiction involved

6  the use of a minor engaging in sexually explicit conduct."

7          THE COURT:  To sustain the charges -- uh-huh.  Of a

8  "minor."

9          MS. HAYS:  And for 13, the defendant --

10         THE COURT:  Well, wait, wait.  That's a "minor."

11 That's not an "identifiable minor."

12         If it has to be an "identifiable minor," if that's

13 what the gloss on the statute is, then I think you better

14 include that.  Otherwise, the jury's not going to know that

15 what you're defining in 23 is the term "minor" that you used in

16 15, because what you're defining in 23 is "identifiable minor,"

17 not "minor."

18         MS. HAYS:  We can change it to make it just the

19 definition of "minor."

20         So we'll withdraw 23 as it stands and --

21         THE COURT:  Well, you know, either that or you change

22 the elements in 15 to "identifiable minor."  I don't know.

23 What I do know is that if a jury comes across this and you

24 don't tie it in so that they can clearly see why you are giving

25 them this definition and why they have to decide it, it's going

1    to cause chaos.

2         (Pause.)

3              THE COURT:  24 and 25, any objection?

4              MS. ODEH:  If these last -- 24 is in the words of the

5    statute, I have no objection.

6              THE COURT:  I don't know if they're in the words of

7    the statute.

8              MS. HAYS:  It is, Your Honor.

9              MS. ODEH:  Or if it's not, I'll raise it as soon as I

10   find out that it's not.  But I think it is.

11             THE COURT:  Okay.  26?

12             MS. ODEH:  I don't have any objection to that.

13        (Pause.)

14             THE COURT:  27?

15             MS. ODEH:  No objection to that.

16             THE COURT:  Let's see.

17             MS. ODEH:  And then I would just want an opportunity,

18   Judge, if they're not in here, to add an instruction that the

19   defendant is presumed innocent and that he doesn't have to

20   testify or present evidence.  I don't know if that was in here

21   or not.

22             THE COURT:  I'm sure it is.  Isn't it?

23             MS. ODEH:  It's in --

24             MS. HAYS:  Yes, Your Honor.

25             MS. ODEH:  -- the very beginning, in the beginning.

1          THE COURT:  If it's not, you certainly have an

2    opportunity to --

3          MS. HAYS:  Instruction No. 10.

4          THE COURT:  How long is this trial going to take?

5          MS. HAYS:  No more than a week, probably less.

6          THE COURT:  Are there any other motions I need to

7    take up?

8          MS. ODEH:  Judge, just -- if I could have just a

9    moment?

10         THE COURT:  Sure.

11         MS. ODEH:  We did file a second motion for discovery

12   because the -- there were two new charges in the indictment.

13         In that motion, we're asking for copies of books,

14   papers, documents, data, photographs, tangible objects the

15   government has and intends to use in its case-in-chief.

16         And I have been advised that there are some documents

17   that we'll receive, specifically computer-logged data.  I don't

18   know if there's anything else that we would be entitled to.

19         THE COURT:  Who advised you of that?

20         MS. ODEH:  I'm sorry?

21         THE COURT:  Who advised you of that?

22         MS. ODEH:  Ms. Hays did.

23         MS. HAYS:  Your Honor, we had told them that we had

24   available a directory and then also the child pornography

25   pictures, which we can't copy, and they were free to come in

1    and look at them.  But I did agree this morning to make a copy

2    of the directory, and then they're going to come in and look at

3    the photos.

4             THE COURT:  You can't give her copies of the

5    pictures?

6             MS. HAYS:  It's illegal, is my understanding, to make

7    copies of the child pornography.

8             THE COURT:  Well, it's illegal to possess drugs, too,

9    but prosecutors walk around in the courtroom with them all the

10   time to show them to the jury.

11            MS. ODEH:  I can tell -- I could tell you, Judge, I

12   know in state cases, we just sign an agreement that we will not

13   distribute or show the photographs to anyone, and we'd be

14   willing to do that, obviously.

15            THE COURT:  Well --

16         (Government counsel conferring with agent.)

17            MS. HAYS:  I guess I could, Your Honor.  The agent

18   won't do it.  So, I mean, I --

19            THE COURT:  Well --

20            MS. HAYS:  I'd be more than happy to meet with her

21   whenever, and they can look at them for as long as they like.

22            THE COURT:  Well, if she copies them, are you going

23   to prosecute her?  Are you going to bring charges?

24            MS. HAYS:  No.  I mean --

25            THE COURT:  I am asking you.

1          AGENT McDONOUGH:  Your Honor, Scott McDonough for the

2     FBI.

3          My understanding is the FBI has a rule that we are

4     not to --

5          THE COURT:  Well, I know the FBI --

6          AGENT McDONOUGH:  -- copy or --

7          THE COURT:  -- has all sorts of rules.  They have

8     rules you can't send the drugs back.  They have all sorts of

9     rules.  But that's not what I am asking.  What I am asking

10    is --

11         MS. HAYS:  Our office has a rule, too.

12         THE COURT:  -- why, you know -- if you stand on the

13    technicality of the law, every time you show the jury a gun as

14    an exhibit, unless you have a firearm owner's identification

15    card, you're violating the law.

16         MS. HAYS:  I guess --

17         THE COURT:  Every time you show them a piece of

18    cocaine or crack, you are violating the law.

19         MS. HAYS:  But I guess it doesn't --

20         THE COURT:  In fact, even when you're possessing the

21    pictures themselves, just holding them --

22         MS. HAYS:  But we're not producing more.

23         THE COURT:  You are holding them, though.  You are

24    possessing them, right?  Isn't possession of child pornography

25    a crime?

1           MS. HAYS:  Well, I guess.

2           THE COURT:  Yes.  So it seems to me very difficult

3    for somebody to prepare a case where 99% of the case stands or

4    falls on certain exhibits, in this case, the photographs,

5    without having possession of those exhibits and being able to

6    go over them with her client, specifically with respect to such

7    things as, you know, if, indeed, it's necessary to have an

8    "identifiable minor," things of that nature.

9           I don't know how you can prepare for that kind of a

10   defense unless you had the exhibits, so that you can go over

11   them with your client.  I just don't understand how you can do

12   it.

13          MS. HAYS:  And then there's the issue, Your Honor, of

14   there's thousands of pictures.  So would this just be the ones

15   that we intend to introduce in trial?

16          MS. ODEH:  That's what our motion asks for, the ones

17   that they would introduce in their case-in-chief.

18          THE COURT:  Yes, I don't see why you can't have the

19   pictures and whatever directory information you have.  She

20   needs to have access to that before the trial.  I don't want

21   the trial stopped in the middle of it for her to say, "I need

22   time to prepare X, Y, and Z."  Okay?

23          So, do you agree it's going to be a one-week trial?

24          MS. ODEH:  Yes, at the most.

25          THE COURT:  Okay.  Well, we start a trial next week,

1    which is a 1999 case.

2         (Court conferring with his courtroom deputy.)

3              THE COURT:  All right.  I guess April 7th we'll start

4    this.  So we actually will start it on April 7th.

5              Move U.S. versus Hank back.

6              THE CLERK:  I will call them and reset this.

7              THE COURT:  Call them and tell them.

8              MS. HAYS:  And, Your Honor, should we set a status

9    for a ruling on the 404(b) issue or is that something you'll

10   just let us know?

11             THE COURT:  I'll let you know.

12             MS. HAYS:  Okay.

13             MS. ODEH:  Judge, there is one other matter, very

14   briefly.

15             We also filed a motion asking that the government

16   reveal any prior similar acts of the defendant that they intend

17   to introduce.  It hasn't -- besides -- if there's anything

18   besides this alleged molestation and the online chats.  It

19   hasn't been specifically answered in the response.

20             THE COURT:  Are you going to use anything else?

21             MS. HAYS:  Your Honor, we might have one more thing.

22             In our 16.1 conference, we told them we'd let them

23   know a week before trial.  We could definitely let them know

24   well before that, probably two weeks before trial.

25             THE COURT:  Okay.

1      MS. HAYS:  And --

2      THE COURT:  Give me time to rule on it.

3      Okay.  Anything else?

4      MS. ODEH:  That's all.

5      THE COURT:  Okay.

6      MS. HAYS:  Thank you.

7      MS. ODEH:  Thank you, Your Honor.

8   (Proceedings concluded.)

1                      C E R T I F I C A T E

2

3

4

5              I, Colleen M. Conway, do hereby certify that the

6    foregoing is a complete, true, and accurate transcript of the

7    Arraignment/Pretrial Conference proceedings had in the

8    above-entitled case before the HONORABLE RONALD A. GUZMAN, one

9    of the Judges of said Court, at Chicago, Illinois, on

10   March 11, 2003.

11

12

13        _/s/ Colleen M. Conway, CSR,RMR,CRR_        _06/12/13_

14             Official Court Reporter              Date
              United States District Court
15            Northern District of Illinois
                   Eastern Division
16

17

18

19

20

21

22

23

24

25